Andreea Melissa Olteanu
2438 Ping Drive
Henderson NV 89074
Tel: 011393447585423
a.porcelli1225@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| **In re:**<br>**ANDREEA MELISSA OLTEANU,**<br>**Debtor.** | **Case No. 24-12393-MKN Chapter 7**<br><br>**MOTION FOR SUMMARY JUDGMENT, TEMPORARY RESTRAINING ORDER, PRELIMINARY INJUNCTION, CONVERSION TO CHAPTER 13, AND RELATED RELIEF** |

Debtor Andreea Melissa Olteanu ("Debtor"), proceeding pro se, respectfully moves this Court pursuant to Federal Rules of Bankruptcy Procedure 7001, 7056, 7065, 9014, and 11 U.S.C. §§ 105(a), 362, 706, and 541.

Debtor is filing this Emergency Motion for Conversion to Chapter 13 at this time because her prior February 2026 Motion seeking conversion to Chapter 11 was never addressed or ruled upon by the Court despite proper service on all parties. Debtor has since filed a comprehensive Motion for Summary Judgment against all parties, which remains fully unopposed. Debtor's income has now stabilized and increased to in excess of **$20,000 per month** during the

current quarter and is on track to return to her pre-hardship level of **$35,000 per month**, despite the severe financial and emotional hardships caused by the prolonged 20-month Chapter 7 case and the inability to sell or refinance the Property due to the defendants' fraudulent liens that were never properly released.

This stable and growing income stream, combined with additional anticipated revenue from rental income and business activities, makes conversion to Chapter 13 not only feasible but highly advantageous to the bankruptcy estate, Debtor, her creditors, and the Trust beneficiaries. Debtor has consistently demonstrated her good faith intent to reorganize and repay allowed claims rather than seek a discharge without addressing legitimate obligations. The current Chapter 7 proceeding has proven ineffective and has only prolonged the paralysis of the estate, making Chapter 13 the appropriate vehicle to achieve a successful reorganization.

**TABLE OF CONTENTS**


TABLE OF EXHIBITS ........ 6

MEMORANDUM OF POINTS AND AUTHORITIES ........ 7

I. INTRODUCTION ........ 7

II. STATEMENT OF FACTS ........ 8

A. Quality Loan's Latest Foreclosure Notice and Trespass ........ 8

B. Door Notices and Ongoing Harassment ........ 8

C. Refusal of Service by Quality Loan ........ 9

D. Lost Sales and Clouded Title ........ 9

E. Broader Pattern of Violations ........ 10

III. LEGAL STANDARD ........ 13

IV. ARGUMENTS ........ 13

V. RELIEF REQUESTED ........ 18

VI. CONCLUSION ........ 19

## TABLE OF EXHIBITS

| Exhibit | Description |
|---|---|
| **A** | Wells Fargo Timeline of Offenses (March 2020 – May 2025) and supporting documentation (over 300 pages) |
| **B** | Foreclosure Notice from Quality Loan Service Corp. scheduling sale for May 21, 2026 |
| **C** | Photographs of unauthorized backyard entry (trash cans, bicycle, gate) |
| **D** | Photographs of foreclosure and Trustee's Sale notices taped to front door |
| **E** | Evidence of water shutoffs, pool damage ($8,000), and Building Code threats (October–November 2025) |
| **F** | Canceled 2025 Real Property Purchase Agreements (RPAs) |
| **G** | Declaration of Andreea Melissa Olteanu |
| **H** | Declaration of Jeffrey Jordan (detailing service refusals and threats) |
| **I** | Prior TRO documents from last year against Quality Loan, NV Energy, and fraudulent liens |
| **J** | Additional supporting exhibits (insurance withholding, income proof, Trust documents, recent company invoices, Monaco Growth Forum materials) |
| **K** | Class Action lawsuits against Wells Fargo (Mormon Ponzi Scheme and Forbearance Class Action settled for $85 Million) |
| **L** | Investigative articles on DA Steve Wolfson ("Meet the Prosecutor Turned Reality Star Who Runs One of the Worst Offices in America," Medium 2017 article on witness tampering, LVRJ Probate Real Estate Scam by Eli Segall, February 2024, and related reports) |
| **M** | Jeffreys House Nonprofit materials, flyers, and Monaco Growth Forum / Crypto Conference documents (projected revenue $400,000–$600,000) |
| **N** | Correspondence with Snell & Wilmer demonstrating repeated obstruction and bad faith |
| **O** | Evidence of Fitzgerald Walton admissions and related threats |
| **P** | Screenshot of public Facebook post by Irina Hansen, Republican candidate for Governor, detailing her eight-year battle with fraudulent liens and title corruption in Clark County |
| **Q** | Cover of Debtor's forthcoming book, *How Wells Fargo Uses Local Politicians to Steal Homes*, demonstrating the systemic issues raised in this Motion |

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This Chapter 7 bankruptcy case has now been pending for more than twenty (20) months a duration that is virtually unprecedented in Chapter 7 proceedings and that stands as a stark indictment of the systemic abuse that occurs when a debtor refuses to "pay to play" with Clark County District Attorney Steve Wolfson and his corporate allies. What began as a legitimate effort by Debtor to obtain the fresh start promised by the Bankruptcy Code has been deliberately transformed into a nightmare of prolonged paralysis, repeated death threats, fabricated criminal charges, unauthorized trespass onto estate property, and the systematic destruction of the largest and most critical asset in the bankruptcy estate the real property located at **2438 Ping Drive, Henderson, Nevada 89074**.

Debtor, a twenty-eight (28)-year Nevada taxpayer and United States citizen, has been forced to live as an international refugee in Italy since April 2025. She is unable to return to the country of which she has been a citizen and taxpayer for forty-three (43) years without facing immediate arrest on fabricated charges and a credible, repeatedly communicated risk of death while in custody. The coordinated racketeering activity of the named parties has rendered the Property completely uninhabitable, unsellable, and unrentable for seventeen (17) consecutive months, causing irreparable harm to Debtor, her two children (Lorenzo and Sofia Porcelli), her disabled tenant Jeffrey Jordan, and his minor son.

Since 2022, Debtor has been forced to litigate in four separate courts (Family Court, Federal Court, District Court, and this Bankruptcy Court) in a desperate attempt to obtain one single unbiased hearing regarding her Property, spending in excess of $230,000 in legal fees. The Chapter 7 case was reopened without any Trustee ever being assigned. Debtor has been subjected to constant terror, including death threats from a meth-addicted individual acting under the influence of powerful local figures, while Wells Fargo and Quality Loan have continued their campaign of fraud, collusion, and bad faith.

In February 2026, Debtor filed a comprehensive Motion for Summary Judgment against all parties. That Motion was properly served on every party, including Wells Fargo Bank, N.A., Quality Loan Service Corp., Evanston Insurance Company, Markel Service, Inc., Clark

County District Attorney Steve Wolfson, the City of Henderson, and all related individuals and entities. Not a single party filed any opposition. Despite this complete and total lack of opposition, the Court has not yet entered the requested orders. The continued refusal to enter these unopposed orders, combined with the escalating criminal conduct by the defendants including the new May 21, 2026 foreclosure notice from Quality Loan now requires this Court to act on an emergency basis to prevent further irreparable harm that cannot await ordinary motion practice.

## II. STATEMENT OF FACTS

### A. Quality Loan's Latest Foreclosure Notice and Trespass

On or about April 29, 2026, Debtor received yet another foreclosure notice from Quality Loan Service Corp. scheduling a trustee's sale of the Property for **May 21, 2026 (Exhibit B – Foreclosure Notice**). This latest action constitutes a direct and willful violation of the automatic stay that has been in full force and effect since the filing of this Chapter 7 case in May 2024. Far from respecting the protections afforded to debtors under the Bankruptcy Code, Quality Loan has persisted in its collection efforts despite clear knowledge of the bankruptcy proceedings and the discharge entered in September 2024. Compounding this blatant disregard for federal law, agents or representatives acting on behalf of Quality Loan or its affiliates have trespassed onto the Property by unlawfully entering the backyard without any permission or legal authority whatsoever. Photographs clearly documenting this unauthorized access including prominent blue and black trash cans positioned inside the gated area, a child's bicycle leaning against structures, and the visibly open gate providing unrestricted entry are attached as **Exhibit C – Backyard Photos**. Such entry is not only a classic trespass under Nevada law but also a further and separate violation of the automatic stay and Debtor's fundamental property rights protected by the Bankruptcy Code. This conduct has caused additional damage to the estate's most valuable asset and has heightened the sense of insecurity and violation felt by Debtor and her tenants.

### B. Door Notices and Ongoing Harassment

In addition to the formal foreclosure notice, foreclosure and Trustee's Sale notices have been physically taped to the front door of the Property in a public and humiliating manner (**Exhibit D – Door Notices Photos**). This tactic of public shaming and intimidation has continued

unabated despite the bankruptcy protections that should have halted all such collection activity. The City of Henderson and its agents have engaged in their own parallel pattern of harassment that has severely impacted the Property and its occupants. This includes deliberate water shutoffs in October 2025 executed despite the active Chapter 7 case and automatic stay which resulted in significant pool damage costing approximately **$8,000**, as well as Building Code enforcement threats issued on Thanksgiving 2025. Those threats were specifically aimed at evicting Debtor's disabled tenant, Jeffrey Jordan, and his minor son while warning of the potential disposal of all personal property and furniture left on the premises (**Exhibit E – Water & Building Code Evidence**). To this day, the City of Henderson has refused Debtor's repeated written requests to transfer the water utility account back into her name as the legal and rightful owner of the Property. These actions represent not only violations of the automatic stay but also ongoing civil rights deprivations and bad-faith interference with the bankruptcy estate.

### C. Refusal of Service by Quality Loan

Jeffrey Jordan, Debtor's disabled tenant who has resided at the Property and assisted her with various matters, made multiple good-faith in-person attempts to serve Quality Loan Service Corp. and its counsel (McCarthy Holthus LLP ) with legal process and other important documents since December 2024. On each and every occasion, service was categorically refused. Staff explicitly informed Mr. Jordan that Quality Loan "does not accept service or communication from Andreea Melissa Olteanu or anyone acting on her behalf." These facts are set forth in detail in the Declaration of Jeffrey Jordan (**Exhibit H – Jeffrey Jordan Declaration**). This deliberate and repeated evasion of service has severely prejudiced Debtor's ability to prosecute her claims, protect the bankruptcy estate, and obtain the relief to which she is entitled under the Bankruptcy Code. It forms part of a calculated strategy by Quality Loan to avoid accountability while continuing its aggressive collection and foreclosure efforts.

### D. Lost Sales and Clouded Title

Two legitimate Real Property Purchase Agreements (RPAs) executed in 2025 with cash buyers from Europe were cancelled at the last minute, literally days before closing, solely because Debtor was unable to clear title of the fraudulent liens that have been placed and maintained by the defendants and their co-conspirators (**Exhibit F – Canceled RPAs**). These lost

sales represent millions of dollars in lost equity and irrecoverable opportunity that can never be restored. The cloud on title stems directly from the defendants' racketeering activity, including the special Nevada-only lien recorded by Foursight LLC (beneficially owned or controlled by DA Steve Wolfson) that purports to allow him to take title to the Property for zero dollars simply by occupying the home. This lien, along with others that were never properly removed despite the Chapter 7 discharge, has effectively paralyzed Debtor's ability to sell or refinance the Property and has caused enormous financial and emotional harm.

### E. Broader Pattern of Violations

Debtor has no significant outstanding debt other than approximately $300,000 owed to Wells Fargo Bank, N.A., consisting primarily of accumulated back payments and late fees. This amount will be subject to a loan modification as part of the Chapter 13 plan, after which Debtor will resume payment of her usual monthly mortgage payment. Debtor also owes approximately $6,500 to $7,000 to Colonial Property Management. There are no other material unsecured debts. Debtor filed this bankruptcy case primarily to address and remove the fraudulent liens that remained on title despite the Chapter 7 discharge.

Debtor currently generates stable monthly income in excess of $20,000, with strong prospects of returning to her pre-hardship level of $35,000 per month as her business activities continue to recover from the prolonged disruption caused by this Chapter 7 case. In addition, once the Property is repaired using the insurance proceeds that Wells Fargo continues to fraudulently withhold, Debtor will generate $7,500 per month in reliable rental income from the home. These income streams, combined with other anticipated revenue sources such as the Monaco Growth Forum events, demonstrate Debtor's clear ability to fund a Chapter 13 plan.

Debtor has no significant outstanding debt other than approximately $300,000 owed to Wells Fargo (primarily accumulated back payments and late fees that will be subject to a reasonable loan modification) and approximately $6,500 to $7,000 owed to Colonial Property Management. There are no other material unsecured debts. Debtor filed this bankruptcy case primarily to address and remove the fraudulent liens that remained on title despite the Chapter 7 discharge entered in September 2024. The bankruptcy was never intended to discharge legitimate

obligations but rather to clear the cloud on title created by the defendants' misconduct so that the Property could be preserved and monetized for the benefit of the estate.

Debtor proposes a feasible 5-year Chapter 13 repayment plan and commits to submitting a full financial plan within 15 days of the assignment of a Chapter 13 Trustee. Monthly plan payments are projected at approximately $5,000 to $6,000, an amount that is well within Debtor's current and anticipated income capacity. Repayment under this structure is not only possible but highly probable. When combined with substantial assets and damages to be recovered including millions from the Olteanu & Porcelli Trust and Michael & Anca Olteanu Trust (of which Debtor is Co-Trustee), withheld insurance funds, and claims against Wells Fargo, Evanston, and Clark County agencies the estate possesses more than sufficient resources to satisfy all allowed claims while preserving and rehabilitating the Property. This filing is made in good faith with a sincere intent to repay creditors through a structured and achievable plan, not to delay or hinder legitimate collection efforts.

In addition to the specific violations detailed above, Debtor is actively preparing to file a civil lawsuit and class action complaint against Wells Fargo Bank, N.A. for its systemic abuse of the Forbearance Program. This nationwide scheme has involved the illegal foreclosure of thousands of homes through deceptive dual tracking practices, whereby borrowers were induced into forbearance agreements while foreclosure proceedings continued unabated in the background. Debtor's experience is emblematic of this broader pattern: despite being placed into a forbearance program, Wells Fargo has continued to pursue aggressive collection and foreclosure actions, withheld substantial insurance proceeds necessary for property repairs, and allowed fraudulent liens to remain on title long after the Chapter 7 discharge. These actions have directly caused the cancellation of multiple legitimate sales and have now precipitated the latest foreclosure notice scheduling a trustee's sale for May 21, 2026. This forthcoming litigation will seek substantial damages on behalf of Debtor and similarly situated victims, and it further demonstrates both the good faith of Debtor's reorganization efforts and the urgent need for conversion to Chapter 13 so that the estate can be properly administered while these claims are pursued for the benefit of all creditors and the bankruptcy estate.

**F. Safety / Corruption Allegations**

Debtor's claims regarding the widespread RICO criminal and civil conspiracy involving Wells Fargo Bank, District Attorney Steve Wolfson, and multiple Clark County government agencies and law firms are strongly supported by numerous class action lawsuits and investigative media reports. These include the Class Action against Wells Fargo for its involvement in the $500 Million Mormon Ponzi Scheme, the Forbearance Class Action Lawsuit against Wells Fargo that settled for $85 Million, and the Probate Real Estate Scam investigative article by Eli Segall of the Las Vegas Review-Journal published in February 2024. Additional exhibits document DA Wolfson's well-documented history of witness tampering, including the 2017 Medium article detailing payments through offshore accounts such as Foursight LLC to secure false testimony in capital cases.

These allegations of ongoing danger to whistleblowers, former associates, perceived foes, and any undesired witnesses to DA Wolfson's wide-ranging racketeering enterprise which mirrors the operations of a cartel empire are further supported by a disturbing and well-documented pattern of violence and intimidation. This non-exhaustive list includes: (1) the investigated murder of Debtor's husband, Mark Porcelli; (2) the two witnessed assassination attempts against Debtor herself; (3) the dumping of 315 human cremated remains in the desert; (4) the murders of Judges Matthew Harter and Melanie Tobiasson immediately following the 2022 Midterm Election; (5) the murder of Jeff German and the framing of Robert Telles for his murder right before the 2022 Midterm Election; (6) the multimillion-dollar civil case brought by RJ Cipriani alleging the same kind of abuse of power by DA Wolfson in prosecuting him as a whistleblower regarding money laundering at Resorts World, which was settled in January; and (7) the framing of reality show and ranching heir Chad Ollinger for murder in December.

Fitzgerald Walton, who has admitted to being Mark Porcelli's paid killer as well as being paid to murder Debtor, has still not been investigated or arrested. Debtor and her tenant family, including disabled tenant Jeffrey Jordan and his minor son, have been continuously harassed by the City of Henderson and other Clark County agencies even during the pendency of this Chapter 7 case.

**EVEN THE DEMOCRATIC REPUBLIC OF CONGO KEEPS TRACK OF PEOPLE THEY CREMATED!**

**YOUR HONOR, HOW MANY MORE PEOPLE NEED TO DIE IN CLARK COUNTY WHILE ATTEMPTING TO PROTECT THEIR CONSTITUTIONAL FIRST AND FOURTEENTH AMENDMENT RIGHTS?**

**EVEN THE DEMOCRATIC REPUBLIC OF CONGO KEEPS TRACK OF PEOPLE THEY CREMATED!**

This pattern is not isolated. Irina Hansen, a Republican candidate for Governor of Nevada running against Lombardo, has publicly documented her own eight-year battle to clear fraudulent liens from her property title in Clark County. Ms. Hansen has detailed repeated instances of collusion between law firms, police, and the County Registrar that prevented her from obtaining clear title despite significant time and expense. Her public statements describe a system in which powerful interests utilize government agencies and allied law firms to cloud titles, harass property owners, and ultimately strip them of equity experiences that directly parallel the multi-year campaign of fraudulent liens, unauthorized foreclosures, and harassment Debtor has faced in this case. The fact that even a candidate for Governor has been subjected to such treatment underscores the pervasiveness of these issues in Clark County and strongly supports Debtor's request for emergency relief, case transfer, and conversion to Chapter 13 so that the bankruptcy estate can be protected from further local interference and corruption.

## III. LEGAL STANDARD

This Court possesses broad equitable powers under 11 U.S.C. § 105(a) to issue any order necessary to carry out the provisions of the Bankruptcy Code and to prevent abuse of the bankruptcy process. Temporary restraining orders and preliminary injunctions are governed by Federal Rule of Civil Procedure 65 (applied in bankruptcy via Bankr. Rule 7065). Summary judgment is appropriate under Federal Rule of Bankruptcy Procedure 7056 when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Conversion from Chapter 7 to Chapter 13 is authorized by 11 U.S.C. § 706 when the debtor is eligible and conversion is in the best interests of the estate and creditors.

## IV. ARGUMENTS

### A. Emergency TRO and Stay of Foreclosure Are Urgently Required

The foreclosure sale scheduled by Quality Loan Service Corp. for **May 21, 2026** poses immediate and irreparable harm to the bankruptcy estate and to Debtor's fundamental rights under the Bankruptcy Code. This latest notice represents yet another willful violation of the automatic stay that has been in effect since the filing of this Chapter 7 case. Quality Loan's actions are not isolated or inadvertent; they form part of a continuing pattern that includes unauthorized trespass onto the Property (as documented in the backyard photographs showing trash cans, a child's bicycle, and open gate access), repeated refusal to accept service of process despite multiple good-faith attempts by Debtor's disabled tenant Jeffrey Jordan, and the public display of foreclosure notices taped to the front door. These acts have caused tangible damage, including the $8,000 pool destruction resulting from earlier water shutoffs, and have rendered the Property effectively unsellable and uninhabitable. Under Federal Rule of Civil Procedure 65 (applied in bankruptcy proceedings), Debtor has demonstrated a strong likelihood of success on the merits given the undisputed stay violations, the clear irreparable harm that will result from the imminent sale (loss of the estate's primary asset, further clouded title, and inability to rehabilitate the Property), and the fact that the balance of hardships tips decisively in Debtor's favor. The public interest strongly supports enforcement of the automatic stay and bankruptcy protections, as allowing creditors to disregard federal law undermines the entire bankruptcy system and rewards bad-faith conduct. Immediate entry of a Temporary Restraining Order and stay of the foreclosure proceedings is therefore essential to preserve the status quo and prevent the complete destruction of the bankruptcy estate before this Court can fully adjudicate the pending motions.

Quality Loan Service Corp. is acting fraudulently and in coordination with Wells Fargo Bank, N.A. Their actions include classic dual tracking (pursuing foreclosure while Debtor was in a forbearance program), proceeding with a foreclosure sale despite the forbearance scam that Debtor was forced into, and continuing aggressive collection efforts in clear violation of the automatic stay. Wells Fargo has already admitted guilt and paid substantial settlements in the nationwide Forbearance Class Action Lawsuit. Quality Loan's latest foreclosure notice for May 21, 2026, combined with their refusal to accept service (as documented in the Jeffrey Jordan Declaration and 2025 correspondence with McCarthy Holthus ), demonstrates bad faith and willful disregard for federal bankruptcy protections.

A successful challenge to these actions could result in voiding the Trustee's Deed, supporting a wrongful foreclosure lawsuit, and awarding damages. Immediate injunctive relief is therefore essential to prevent irreparable harm to the bankruptcy estate.

**B. Conversion to Chapter 13 Serves the Best Interests of the Estate**

Debtor possesses regular and stable income in the amount of **$15,000 to $18,000+ per month** (exclusive of rental income), which is more than sufficient to propose and fund a feasible Chapter 13 repayment plan. This income, combined with the potential **$7,500 monthly rental income** once the Property is repaired using the $61,250 in wrongfully withheld insurance proceeds, demonstrates Debtor's ability to make plan payments while retaining and rehabilitating the Property for the benefit of the estate and creditors. The current Chapter 7 proceeding has proven wholly ineffective: more than twenty (20) months have passed since filing, no Trustee has ever been assigned despite the reopening of the case, and numerous fraudulent liens including the dangerous Foursight LLC lien remain uncleared on title despite the September 2024 discharge. This prolonged paralysis has caused irreparable harm, including the cancellation of two legitimate 2025 sales due to clouded title and the ongoing deterioration of the Property. Conversion to Chapter 13 pursuant to 11 U.S.C. § 706 is not only authorized but is clearly in the best interests of the estate and all creditors. It will allow Debtor to propose a structured repayment plan that addresses legitimate claims while providing a realistic path to retain the home, complete necessary repairs, and generate value for the estate something the current Chapter 7 has failed to accomplish despite the protections of the Bankruptcy Code.

This Emergency Motion is not filed for the purpose of causing any delay or frustrating creditors. To the contrary, repayment under the proposed Chapter 13 plan is not only possible but highly probable and realistic. Debtor has only two creditors with allowed claims: Wells Fargo Bank, N.A. (approximately $300,000 in back payments and late fees, subject to a reasonable loan modification) and Colonial Property Management (approximately $6,500). There are no other material unsecured debts. Debtor filed this bankruptcy case primarily to remove fraudulent liens that remained on title despite the Chapter 7 discharge.

Debtor possesses sufficient current and projected income currently in excess of **$20,000 per month** and expected to return to **$35,000 per month** together with anticipated **$7,500 monthly rental income** once the Property is repaired using the insurance funds wrongfully

withheld by Wells Fargo. When combined with substantial assets and damages to be recovered (totaling between **$7 Million and $12 Million+** from the Olteanu & Porcelli Trust, the Michael & Anca Olteanu Trust, Wells Fargo, Evanston Insurance, and claims against Clark County agencies), Debtor has more than adequate resources to fully satisfy all obligations under a structured 5-year repayment plan while preserving and rehabilitating the Property for the benefit of the bankruptcy estate and all creditors.

**C. Unopposed Summary Judgment and Supplemental Relief Are Warranted**

Debtor's original Motion for Summary Judgment filed in February 2026 was properly served on every party in interest, including Wells Fargo Bank, N.A., Quality Loan Service Corp., Evanston Insurance Company, Markel Service, Inc., and all government defendants. Despite having ample time and opportunity, **not a single party filed any opposition**. Under well-established principles of civil procedure and Bankruptcy Rule 7056, the failure to oppose a properly supported motion for summary judgment constitutes a waiver of any objection and is treated as an admission of the material facts and legal conclusions set forth therein. The Court should therefore enter the requested orders granting summary judgment on all claims in the original motion, including the immediate release of the $61,250 in unlawfully withheld insurance funds. Supplemental relief against Wells Fargo and Quality Loan is also warranted on the undisputed record before the Court. This includes cancellation of the mortgage and foreclosure proceedings, full accounting and release of all withheld funds, and the award of damages for the willful stay violations, bad faith conduct, and lost sales caused by the fraudulent liens and clouded title. The facts supporting this relief including the detailed Wells Fargo Timeline of Offenses and the canceled 2025 RPAs remain uncontroverted and compel judgment in Debtor's favor as a matter of law.

**D. Additional Injunctive Relief Is Necessary to Protect Debtor and the Estate**

Beyond the TRO and stay of foreclosure, broader injunctive relief is urgently required to halt the ongoing harassment and threats that have made it impossible for Debtor to exercise her rights or return to the United States. Relief against government actors (including DA Steve Wolfson, City of Henderson officials, and related agencies) is necessary to declare all fabricated bench warrants null and void at every level, order the immediate transfer of the water utility back into Debtor's name as legal owner, and enjoin further interference with the Property

or Debtor's tenants. Similarly, injunctive relief against Wells Fargo and Quality Loan is essential to stop their continued collection efforts, refusal of service, and participation in the racketeering activity that has destroyed the estate's primary asset. These measures are authorized under the Court's broad equitable powers (§ 105(a)) and are necessary to protect the safety of Debtor, her disabled tenant Jeffrey Jordan and his minor son (who have been subjected to explicit threats for assisting Debtor), and the integrity of the bankruptcy process itself. Without this relief, the estate will continue to suffer irreparable harm, Debtor will remain in forced exile, and the promises of the Bankruptcy Code will be rendered meaningless.

**E. Immediate Transfer of the Chapter 13 Case to the Northern District of California Is Required in the Interest of Justice**

Upon conversion of this case to Chapter 13, Debtor respectfully requests that the Court immediately transfer the proceedings to the United States Bankruptcy Court for the Northern District of California pursuant to **28 U.S.C. § 1412** (transfer in the interest of justice) and Federal Rule of Bankruptcy Procedure 7087. This transfer is not only appropriate but essential for the fair and effective administration of the estate. The transfer is compelled by the presence of substantial assets belonging to the **Olteanu & Porcelli Trust** and the **Michael & Anca Olteanu Trust**, which total over **$3–5 Million** in real property, brokerage accounts, and other assets located in California. Debtor serves as Co-Trustee of both trusts, and these assets are critical to any successful reorganization.

Long-arm statutes and **quasi in rem jurisdiction** are appropriate and applicable over these California-based assets. The Northern District of California is the proper venue for marshaling and administering these trust assets, which form a core component of Debtor's Chapter 13 repayment capacity and estate value. Debtor is also technically a political refugee residing abroad due to credible threats in Nevada, further supporting her right to seek jurisdiction in a district where substantial assets are located.

Continuing administration of this Chapter 13 case in Clark County would constitute **reckless endangerment** to Debtor and the beneficiaries of both Trusts. Debtor has been forced to live in exile in Italy since April 2025 because she cannot safely return to the United States without facing immediate arrest on fabricated charges and a credible risk of physical harm or death. This danger stems from ongoing threats, witness tampering, and a documented pattern of violence and

corruption by local actors. Clark County is not a safe venue for any federal bankruptcy case involving victims of Clark County government agency corruption to be adjudicated.

Transfer to the Northern District of California is necessary to provide neutral territory, protect Debtor's fundamental right to meaningfully participate in these proceedings without fear for her life, and ensure the proper identification, recovery, and administration of Trust assets for the benefit of the bankruptcy estate and all creditors. For these reasons, venue transfer is compelled both as a matter of law and in the clear interest of justice.

## V. RELIEF REQUESTED

1. For the reasons set forth in detail above, Debtor Andreea Melissa Olteanu respectfully requests that this Court grant the following emergency relief:
2. Immediately issue a Temporary Restraining Order (without notice if necessary) and Preliminary Injunction enjoining Quality Loan Service Corp., Colonial Property Management, Wells Fargo Bank, N.A., and all persons acting in concert with them from conducting, advertising, or proceeding with the foreclosure sale scheduled for May 21, 2026, or taking any further collection or enforcement actions against the Property. This relief is particularly warranted given Quality Loan's fraudulent conduct on behalf of Wells Fargo, including dual tracking, the forbearance scam, refusal to accept service despite multiple documented attempts by Jeffrey Jordan at McCarthy Holthus , and ongoing obstruction of communication as evidenced by correspondence dating from January 2025 through June 2025.
3. Convert this Chapter 7 case to Chapter 13 pursuant to 11 U.S.C. § 706 and immediately assign a Chapter 13 Trustee.
4. Upon conversion, transfer the Chapter 13 case to the United States Bankruptcy Court for the Northern District of California pursuant to 28 U.S.C. § 1412 and Federal Rule of Bankruptcy Procedure 7087 for the reasons detailed herein.
5. Grant all prior requested relief, including a stay of all foreclosure and collection proceedings, entry of the unopposed February 2026 Summary Judgment (with supplemental relief including mortgage cancellation and release of the $61,250 in withheld insurance proceeds), an order directing the City of Henderson to transfer the water utility

account back into Debtor's name, and a declaration that all fabricated bench warrants issued against Debtor are null and void.

6. Debtor will file a complete 5-year Chapter 13 repayment plan within 15 days of Trustee assignment. This filing is not intended to cause any frivolous delay repayment is not only possible but highly probable given Debtor's current income in excess of $20,000 per month (projected to reach $35,000), anticipated rental income of $7,500 per month, and substantial assets and damages to be recovered.
7. Set an expedited hearing on this Emergency Motion within three (3) business days (or at the earliest date the Court can accommodate) and grant an Order Shortening Time due to the imminent May 21, 2026 foreclosure sale and the risk of irreparable harm.
8. Grant such other and further relief as this Court deems just, equitable, and proper to protect the bankruptcy estate, Debtor's rights, and the integrity of the bankruptcy process..

## VI. CONCLUSION

The imminent foreclosure sale scheduled for May 21, 2026, combined with Quality Loan Service Corp.'s ongoing willful violations of the automatic stay, unauthorized trespass onto estate property, deliberate refusal to accept service, and the coordinated threats and harassment directed at Debtor and her disabled tenant Jeffrey Jordan, creates an emergency that demands immediate intervention by this Court. Debtor has been forced into international exile, unable to return to the United States the country of which she has been a citizen and taxpayer for decades while her largest asset is being systematically destroyed through fraud, collusion, and bad faith conduct that has persisted for years.

Clark County is not a safe place for any federal bankruptcy case involving victims of Clark County government agency corruption to be adjudicated. Continuing these proceedings in this District would constitute reckless endangerment to Debtor and the beneficiaries of the Olteanu & Porcelli Trust and the Michael & Anca Olteanu Trust. Debtor's allegations of widespread RICO activity and systemic corruption are well-supported by class action lawsuits, investigative journalism, and a disturbing pattern of violence against witnesses, whistleblowers, and perceived adversaries.

EVEN THE DEMOCRATIC REPUBLIC OF CONGO KEEPS TRACK OF PEOPLE THEY CREMATED!

YOUR HONOR, HOW MANY MORE PEOPLE NEED TO DIE IN CLARK COUNTY WHILE ATTEMPTING TO PROTECT THEIR CONSTITUTIONAL FIRST AND FOURTEENTH AMENDMENT RIGHTS?

This Court possesses the equitable authority under 11 U.S.C. § 105(a) and the specific tools under the Federal Rules of Bankruptcy Procedure to prevent further abuse and to vindicate the protections promised by the Bankruptcy Code. Debtor respectfully urges this Court to grant this emergency motion in its entirety issuing the requested TRO and stay, converting the case to Chapter 13, assigning a Trustee, transferring the case to the Northern District of California, entering summary judgment, and providing all additional injunctive relief. Only through such prompt and decisive action can the integrity of the bankruptcy process be preserved and Debtor be afforded the fresh start that the law intends.

**Respectfully submitted**

On this 5th day of May 2026

BY: ______________________

Andreea Olteanu , Pro Se

Andreea Melissa Olteanu

2438 Ping Drive

Henderson NV 89074

Tel: 011393447585423

a.porcelli1225@gmail.com

Andreea Melissa Olteanu
2438 Ping Drive
Henderson NV 89074
Tel: 011393447585423
a.porcelli1225@gmail.com

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF NEVADA**

**In re:**

**ANDREEA MELISSA OLTEANU,**

**Debtor.**

**Case No. 24-12393-MKN Chapter 7**

**DECLARATION OF ANDREEA MELISSA OLTEANU IN SUPPORT OF EMERGENCY MOTION**

I, Andreea Melissa Olteanu, declare under penalty of perjury under the laws of the United States of America that the following is true and correct to the best of my knowledge and belief:

1. I am the Debtor in the above-captioned Chapter 7 bankruptcy case, Case No. 24-12393-MKN, which has now been pending for more than twenty (20) months. I am competent to make this declaration and have personal knowledge of all facts stated herein.

2. On or about April 29, 2026, I received yet another foreclosure notice from Quality Loan Service Corp. scheduling a trustee's sale of my Property at 2438 Ping Drive, Henderson, Nevada 89074 for May 21, 2026. This latest action is a direct and willful violation of the

automatic stay that has been in effect since I filed this Chapter 7 case in May 2024. A true and correct copy of the foreclosure notice is attached as **Exhibit B**.

3. Compounding this violation, agents or representatives acting on behalf of Quality Loan or its affiliates have trespassed onto the Property by unlawfully entering the backyard without permission or legal authority. Photographs clearly showing this unauthorized access, including blue and black trash cans, a child's bicycle, and the open gate, are attached as **Exhibit C**. This trespass not only violates Nevada trespass laws but also constitutes a further violation of the automatic stay and my property rights protected by the Bankruptcy Code.

4. Foreclosure and Trustee's Sale notices have also been physically taped to the front door of the Property in a public and humiliating manner. True and correct copies of these door notices are attached as **Exhibit D**. In addition, the City of Henderson and its agents have engaged in a continuing pattern of harassment, including deliberate water shutoffs in October 2025 (despite the active bankruptcy case), which caused approximately $8,000 in pool damage, and Building Code enforcement threats issued on Thanksgiving 2025 aimed at evicting my disabled tenant Jeffrey Jordan and his minor son while threatening to dispose of all personal property. Evidence of these events is attached as **Exhibit E**. To this day, the City has refused my repeated written requests to transfer the water utility account back into my name as the legal owner.

5. My disabled tenant, Jeffrey Jordan, made multiple good-faith in-person attempts to serve Quality Loan Service Corp. and its counsel since December 2024. On every occasion, service was categorically refused, with staff explicitly stating that Quality Loan "does not accept service or communication from Andreea Melissa Olteanu or anyone acting on her behalf." These facts are detailed in the Declaration of Jeffrey Jordan, attached as **Exhibit H**. This deliberate evasion has severely prejudiced my ability to protect the bankruptcy estate.

6. Two legitimate Real Property Purchase Agreements executed in 2025 with cash buyers from Europe were cancelled at the last minute solely because I was unable to clear title of the fraudulent liens placed and maintained by the defendants. True and correct copies of these cancelled RPAs are attached as **Exhibit F**. These lost sales represent millions of dollars in lost equity and opportunity. The cloud on title stems directly from the defendants' racketeering activity, including the special Nevada-only lien recorded by Foursight LLC.

7. The full history of Wells Fargo's misconduct is set forth in the detailed **Wells Fargo Timeline of Offenses (March 2020 – May 2025)**, attached as **Exhibit A**, supported by over 300 pages of exhibits. This includes unilateral forbearance placement, collusion in false arrests, withholding of $61,250 in insurance proceeds, and participation in fraudulent foreclosure schemes. I have current stable income of $15,000–$18,000+ per month (plus potential $7,500 rental income once repairs are completed), which demonstrates my ability to fund a Chapter 13 plan.

8. I have been forced to live as an international refugee in Italy since April 2025 because I cannot safely return to the United States without facing immediate arrest on fabricated charges and a credible risk of death while in custody. I have been subjected to constant terror, including death threats from a meth-addicted individual, while my family has endured profound trauma. My daughter Sofia discovered her father's blood-soaked body, and both of my children have suffered severe emotional distress. I have incurred over $230,000 in legal fees across multiple courts in a desperate attempt to obtain justice, all while the Chapter 7 case has remained unresolved without a Trustee.

9. I am preparing to initiate a civil lawsuit and class action against Wells Fargo Bank, N.A. for its widespread and systemic abuse of the Forbearance Program, which has resulted in the illegal foreclosure of thousands of homes nationwide. This pattern includes deceptive dual tracking practices and violations of bankruptcy protections similar to those Debtor has endured in this case. I intend to vigorously pursue these claims not only for my own benefit and the benefit of the bankruptcy estate, but also on behalf of other similarly situated homeowners who have been victimized by these same predatory practices. This action will seek to recover damages caused by Wells Fargo's misconduct, including wrongfully withheld insurance proceeds, clouded title, lost equity from canceled sales, and other substantial harms inflicted upon me and my family.

10. The facts in the attached Motion, Memorandum, and exhibits are true and correct. I respectfully request that the Court grant the emergency relief sought to protect the bankruptcy estate, my fundamental rights, and the integrity of the bankruptcy process.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.

Declared On this 5th day of May 2026

BY: ______________________

Andreea Olteanu , Pro Se

**Respectfully submitted**

On this 5th day of May 2026

BY: ______________________

Andreea Olteanu , Pro Se

Andreea Melissa Olteanu

2438 Ping Drive

Henderson NV 89074

Tel: 011393447585423

a.porcelli1225@gmail.com